UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
HERMÈS INTERNATIONAL, et al.,

                Plaintiffs,                MEMORANDUM AND ORDER

    -against-                              CV 06-3605 (LDW) (WDW)

SERAFINA KIERNAN, et al.,

                Defendants.
----------------------------------------------------X
WEXLER, District Judge

       Plaintiffs Hermès International, Hermès International Corporation, Hermès International Corporation France, Hermès Sellier, and Hermès of Paris, Inc. (collectively, "Hermès") bring this action against defendant Serafina Kiernan, individually and d/b/a Impursenator Handbags and www.impursenator.com ("Kiernan"), and others, asserting claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq. On August 9, 2007, the Court granted Hermès summary judgment against Kiernan on liability. The issue of damages against Kiernan, who appeared without counsel, was tried before this Court on June 23, 2008. The following are the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

       Hermès is a leading designer and producer of high-quality luxury goods that include handbags and other leather items. Hermès is the owner and/or the exclusive United States licensee of many U.S. registered trademarks that are closely associated with its goods and famous throughout the world (the "Hermès Marks"). Among its most famous trademarks are the following six infringed by Kiernan: (1) the "Caleche," represented by a distinctive drawing of a horse and carriage with an "H" (U.S. TM Reg. No. 2436099); (2) the word-mark HERMÈS (U.S.

TM Reg. No. 0369681); (3) the word-mark KELLYBAG (U.S. TM Reg. No. 2957154); (4) the word-mark BIRKIN (U.S. TM Reg. No. 2991927); (5) a distinctive drawing of a horse and carriage and the word HERMÈS (U.S. TM Reg. No. 0883588); and (6) a handbag closure design featured on the Hermès Birkin bag (U.S. TM Reg. No. 1806107).

At the direction of Hermès' counsel, George Arnold & Associates ("GAA") began an investigation into the sale of fake Hermès products on the website www.impursenator.com. In May 2006, GAA investigator Matthew Hewlett ("Hewlett") found various handbags bearing Hermès Marks available for sale on the website. Hewlett emailed Impursenator Handbags at impursenator@aol.com about buying an Hermès handbag and was directed to send payment to Impursenator Handbags at P.O. Box 7592, Freeport NY 11520. In a live chat with "Serafina" at impursenator@aol.com, Hewlett was advised that Impursenator Handbags sold fake Hermès handbags at wholesale and claimed to have many fake handbags available. Thereafter, GAA bought a fake Hermès handbag from Impursenator Handbags, electronically paying $369 via PayPal. On or about June 20, 2006, GAA received the handbag and dust cover (which protects the product during shipment), with packaging showing a return address in China. Hermès sent the handbag and dust cover for authentication, which confirmed they were counterfeit.

Following its investigation, Hermès filed a summons and complaint in this action, with an application for, inter alia, an *ex parte* temporary restraining order ("TRO") and seizure order (the "Application"). The seizure order was directed to 100 Irving Street, Freeport, New York ("100 Irving"), Kiernan's probable residence. On July 25, 2006, the Court granted the Application, directing the TRO and seizure order (the "July 25th Order"). On July 31, 2006, two Freeport police officers, accompanied by Hermès' counsel and GAA employees, executed the

July 25th Order at 100 Irving. According to Hewlett, Kiernan was not at the house and Hermès' counsel attempted to contact Kiernan and left her a phone message. The police and Hermès' representatives entered the house after a locksmith unlocked a rear door. After they had entered the house, Hermès counsel Scott Gelin spoke with Kiernan on the phone. The police and Hermès' representatives then searched the house.

During the search, Hermès' representatives found, in a walk-in attic a few feet from the master bedroom, 26 handbags and dust covers bearing the Hermès Marks. The attic also had containers holding other brands of handbags. In addition, the search uncovered, <u>inter alia</u>, computers and assorted papers that appeared related to Kiernan's counterfeit handbag business, including a notebook containing a record of handbags and items Kiernan purchased from her supplier. Upon concluding the search, the locksmith replaced the rear lock and the Hermès' representatives left at the house a new set of keys and copies of, <u>inter alia</u>, the July 25th Order, the Application, and a receipt for the property seized.[1]

Kiernan testified that she resides at 100 Irving. She admitted that she operated a business there selling multiple brands of fake handbags through Impursenator Handbags and www.impursenator.com – a website that she established in 2005 in her maiden name, "Antoinette Nigro." She maintained that she purchased fake handbags from a supplier and "drop shipped" them directly from the supplier to her customers following the customers' orders. She

---

[1] Hewlett testified to his investigation and the seizure. During his testimony, Hermès offered into evidence two declarations by Hewlett containing various exhibits, identified as Exhibits D-1 and D-3. The Court declined to admit the declarations, but allowed admission of exhibits. Following the trial, Hermès renewed its request to admit the declarations. Upon consideration, the request is denied. Hewlett's testimony sufficiently covered the subject matter of his declarations.

also admitted either at trial or in her deposition that she: (1) told the website's designer that she intended to sell fake handbags; (2) sold fake handbags knowing they were counterfeit; (3) sold fake Hermès handbags to purchasers inside and outside the United States; (4) received fake Hermès handbags at 100 Irving; (5) accepted returns at 100 Irving and resold them to other consumers from that location; and (6) had counterfeit goods seized by the U.S. Customs Service and, as a result, changed her "ship to" address to that of her son's fiancee, "Anjelyne Martinez."[2]

On the website, she touted the fake Hermès handbags as "mirror image quality," stating further: "Designer handbags can be prohibitively expensive, never fear, it's Impursenator to the rescue. We have replica designed handbags that are indistinguishable in every way except one, the price."

Kiernan admitted recording in the seized notebook the purchases of fake Hermès handbags from one of her suppliers, Dinese Kestly ("Kestly").[3] The seized notebook shows that she purchased at least 51 fake Hermès handbags for resale, most of which were fake Birkin and Kelly bags. Kiernan occasionally paid Kestly by check. However, only one check was discovered, and Kiernan denied knowing the location of any remaining checks. She denied having any records related to other suppliers, even though she admitted having at least one other supplier. She admitted that her records were incomplete, missing data as to sales and pricing. Nevertheless, she claimed to have made approximately $25 to $50 per handbag.

---

[2] Hermès named Anjelyne Martinez as a defendant in the Second Amended Complaint, but dismissed the action as to her by order dated June 2, 2008.

[3] Hermès named Dinese Kestly as a defendant in the Amended Complaint, but dismissed the action as to her by stipulation ordered on January 30, 2007.

Following the seizure, Kiernan apparently ceased her counterfeiting activities. However, she did not cooperate fully during discovery. At trial, she claimed that she never saw or discussed with her attorney, Eliot Bloom ("Bloom"), Hermès' interrogatories or document requests or her responses thereto, even though, in her responses, she denied knowledge as to the total number of handbags she purchased, how much she paid for them, and to whom and for how much they were sold, and maintained that she had no recollection or record of, <u>inter</u> <u>alia</u>, when she bought and sold infringing products, except for what was in the notebook. As a result, there is very little evidence to determine the full extent of her illegal activities.

Following the seizure, Kiernan retained Bloom, who accepted service of the July 25th Order, summons, complaint, and remainder of the Application within the 10-day time period required by the July 25th Order. In this respect, Bloom executed on August 3, 2006, an "Acknowledgment and Acceptance of Service of Process." Thereafter, Kiernan entered into a "Stipulated Preliminary Injunction," which also acknowledged service of process. Kiernan, through Bloom, eventually filed an "Answer and Counterclaim," which did not include any challenge to service of the July 25th Order and accompanying documents. Thus, service of the July 25th Order, summons, complaint and accompanying documents was sufficient. In any event, Kiernan waived any challenge thereto. Kiernan later executed a "Stipulation of Dismissal with Prejudice," dismissing her counterclaims.

Robin Adelman ("Adelman"), director of the main floor at Hermès' New York City store – the largest Hermès store in North America – testified that the fake Hermès handbag and dust cover GAA purchased from Kiernan bore numerous Hermès Marks, including U.S. Trademark Reg. Nos. 1806107 and 369681 on the handbag, and U.S. Trademark Reg. No. 2436099 on the

dust cover.  Kiernan admitted to selling fake Hermès handbags having bright orange paper tags displaying "HERMÈS," which is the subject of U.S. Trademark Reg. No. 0883588.  Adelman testified that Hermès never uses paper hang tags.  Kiernan also admitted using various Hermès Marks on her website to describe some of the handbags she sold, including, inter alia, the word-marks "BIRKIN" and "KELLY," subjects of U.S. Trademark Reg. Nos. 2991927 and 295154.

According to Adelman, the New York City store sold approximately 4,000 handbags, totaling $22 million, in 2007.  Of those bags, 1,200 were Birkin bags and 1,000 were Kelly bags.  She testified that the price range for Birkin bags is $5,900 to $150,000, with the two most popular sizes priced at $7,650 and $8,300, and that the price for the two most popular sizes of Kelly bags is $6,600 and $6,900.

Adelman explained that "essentially each bag is made to order per product" and that a waiting list became "so intensive" that it was abandoned five years ago.  She further explained that Hermès handbags are sold to a variety of customers, from those of modest income who save up because it's a "dream of theirs" to wealthy individuals who purchase several Hermès handbags.  Adelman maintained that Hermès has lost sales and been harmed by counterfeit sales.  She noted that consumers, almost daily, confront Hermès to complain about its failure to "fix this problem," i.e., counterfeit sales, and, as a result, refuse to purchase any Hermès products.

Hermès seeks statutory damages and attorney's fees and costs for Kiernan's infringement of its six trademarks.

## DISCUSSION AND CONCLUSIONS OF LAW

Under the Lanham Act, statutory damages may range from $500 to a maximum of $100,000 per trademark infringed. See 15 U.S.C. § 1117(c)(1). However, where the defendant's infringement is "willful," the maximum award per trademark infringed increases to $1,000,000. See id. § 1117(c)(2). Infringement is willful when " 'the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility.' " Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288 (2d Cir. 1999) (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)).

Hermès argues that Kiernan's infringement was willful, and it seeks an award of $2,448,000, representing $408,000 per each of the six trademark's infringed (calculated by multiplying the number of fake Hermès handbags Kiernan's notebook shows that she purchased for resale, 51, by the average price of Birkin and Kelly bags, which it claims is approximately $8,000), plus an additional amount for because of the willfulness and for deterrent purposes in an, and attorneys' fees.

Upon consideration, the Court finds that Kiernan's infringement was willful. Kiernan admitted selling fake handbags all over the world, stating on her website that the handbags were "mirror image quality" and "replica designed" and that the only noticeable difference was the reduced price. She claimed at trial that she did not know that her actions were illegal. However, considering her knowledge that the handbags were fake and the complexity of the website and shipping process, the Court finds that she acted with knowledge of the unlawful nature of her actions or, at least, with reckless disregard to such unlawful actions.

In determining the amount of statutory damages, the Court considers several factors, including, inter alia: the defendant's profits, the plaintiff's lost profits, the defendant's willfulness, the size of defendant's counterfeiting operation, the defendant's efforts to mislead and conceal, and the need to deter the defendant and others. See Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986); Phillip Morris USA Inc. v. Marlboro Express, No. CV-03-1161, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004); Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 165-67 (S.D.N.Y. 1999).

As for Kiernan's profits, she claimed that she made only $25 to $50 per handbag. Based on the 51 fake Hermès handbags she purchased between April 2005 and July 2006, her profit on their resales was approximately $1,275 to $2,550. However, she testified that she did not keep complete records of her sales, so her profits may have been significantly higher. As a result, she must bear the uncertainty caused by her failure to keep sufficient records. See Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 972-73 (2d Cir.1985); Deering, Milliken & Co. v. Gilbert, 269 F.2d 191, 193 (2d Cir. 1959); Gucci Am., 315 F. Supp. 2d. at 521.

As for the size of Kiernan's counterfeiting operation, its full extent, including the number of other individuals, and volume of product, involved is unclear. It appears to have been broader than the 51 fake Hermès handbags (mostly fake Birkin and Kelly bags) she purchased over a 16-month period. Sales of those 51 equate to only 38 handbags per year or less than 1.5% of the 4,000 Birkin and Kelly bags Hermès sold in its New York store in 2007. Again, Kiernan must bear the uncertainty caused by her failure to keep sufficient records.

As for Kiernan's efforts to conceal her operation, she registered her website under her maiden name and used shipping addresses other than her own, preventing direct access to her through those channels. Although, she did not conceal her operations when Hermès began its investigation, she was less than cooperative during discovery in this action.

As for the need to deter Kiernan and others, Kiernan ceased her counterfeiting activities following the seizure, and there is no evidence that she has continued her infringing conduct. However, given that the extent of her operation is unclear, particularly the number and identities of others involved, there appears to be a real need to deter others from such insidious conduct.

As for Hermès' lost profits, given the vast price disparity between the fakes Kiernan sold and genuine Hermès handbags, which are made to order, it is not clear that Kiernan's sales caused Hermès to lose any sales. However, the Court realizes that the counterfeit sales likely caused injury to Hermès, albeit to an extent and degree that is difficult or impossible to quantify.

Upon consideration of the various factors under the circumstances, the Court awards $75,000 for each of the six trademarks infringed, for a total of $450,000.

As for Hermès' request for attorney's fees, the amount of statutory damages awarded sufficiently advances the goals of deterrence and compensation, making any additional award unnecessary, particularly given that Kiernan's operation has been completely shut down. See Gucci Am., 315 F. Supp. 2d. at 523. The statutory award should more than compensate Hermès for the actual damage it has suffered as well as to deter other or future infringers.

## CONCLUSION

Based on the above, the Court awards Hermès statutory damages against Kiernan in the amount of $450,000. The Clerk of Court is directed to enter judgment for Hermès, with costs, against Kiernan. Hermès is directed to serve a copy of this Memorandum and Order on Kiernan.

SO ORDERED.

                                              _____/s/_____
                                              LEONARD D. WEXLER
                                              UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       August 28, 2008